_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
June 07, 2022

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| In re:<br><br>MATTHEW ROYLANCE and ANGELA ROYLANCE,<br><br>          Debtors. | Case No.: 09-19675-mkn<br><br>Chapter 7 |
| MATTHEW ROYLANCE and ANGELA ROYLANCE,<br><br>          Plaintiffs,<br><br>vs.<br><br>U.S. BANK NATIONAL ASSOCIATION, as, Trustee for Credit Suisse First Boston Mortgage Securities Corp. CFSB Mortgage Pass-Through Certificates, Series 2003-AR26, et al.,<br><br>          Defendants. | Adv. Proc. No.: 22-01015-mkn<br><br>Date:   May 12, 2022<br>Time:  1:30 p.m. |

**ORDER ON DEFENDANTS U.S. BANK NATIONAL ASSOC., AS TRUSTEE; SPECIALIZED LOAN SERVICING, LLC; AND QUALITY LOAN SERVICE CORPORATION'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF[sic] MATTHEW AND ANGELA ROYLANCE'S "COMPLAINT TO DETERMINE VALIDITY, EXTENT, AND PRIORITY OF LIEN AND OTHER RELIEF," FILED FEBRUARY 9, 2022**[1]

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the clerk of court. All references of "AECF No." are to the documents filed in the above-captioned adversary proceeding. All references to "Section" or "§§ 101-1532" are to the provisions of the Bankruptcy Code. All references to "FRCP" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence.

1  On May 12, 2022, the court heard Defendants U.S. Bank National Assoc., as Trustee; Specialized Loan Servicing, LLC; and Quality Loan Service Corporation's Motion to Dismiss or in the Alternative Moton for Summary Judgment as to Plaintiff[sic] Matthew and Angela Roylance's "Complaint to Determine Validity, Extent, and Priority of Lien and Other Relief," Filed February 9, 2022 ("Dismissal Motion"), brought in the above-referenced adversary proceeding. The appearances of counsel were noted on the record. After arguments were presented, the matter was taken under submission.

## BACKGROUND[2]

On June 8, 2009, Matthew and Angela Roylance ("Debtors") filed a voluntary "skeleton" Chapter 7 petition. (ECF No. 1). The case was assigned for administration to Chapter 7 panel trustee James F. Lisowski, Sr.

On June 12, 2009, Debtors filed their schedules of assets and liabilities ("Schedules") and statement of financial affairs ("SOFA"). (ECF No. 14). On their real property Schedule "A," Debtors listed a personal residence owned by Angela Roylance ("Angela") located at 1509 Dusty Canyon Street, Henderson, Nevada 89052 ("Residence"). Debtors stated the value of the Residence at $297,000. On their personal property Schedule "B," Debtors listed no interests in unincorporated businesses, partnerships, or joint ventures. On their Schedule "C," Debtors claimed a homestead exemption in the Residence. On their secured creditor Schedule "D," Debtors listed a first mortgage in the amount of $232,913.30, owed by Angela in favor of America's Servicing Co. secured by the Residence., as well as a second mortgage in the amount of $164,991.44, owed by Angela in favor of Bank of America. On their Schedule "H," Debtors listed as co-debtors an entity entitled Matthew Roylance Co., LLC, located at their home address. At Item 4 of their SOFA, Debtors listed six separate civil actions in various stages. At

---

[2] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned adversary proceeding and the above-captioned Bankruptcy Case See U.S. v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980); see also In re Blas, 614 B.R. 334, 339 n. 27 (Bankr.D.Alaska 2019)("This court may take judicial notice of the dockets of other courts."); Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

2

Item 18 of their SOFA, Debtors listed an interest in a construction business identified as Matthew Roylance Co., LLC and a leasing business identified as Roylance Co., LLC.

On July 13, 2009, Debtors filed amended Schedules and an amended SOFA. (ECF Nos. 21 and 22). On their amended Schedule "C," Debtors no longer claimed a homestead exemption in their Residence. On their amended Schedule "H," Debtors added Roylance Company, LLC, located at their home address, with respect to one claim. At Item 4 of their amended SOFA, Debtors listed eight separate civil actions in various stages.

On July 20, 2009, the assigned Chapter 7 trustee reported that there were no assets available for distribution to creditors. (ECF No. 27).

On September 18, 2009, creditor U.S. Bank ("USB") filed a motion for relief from stay to pursue foreclosure on the first mortgage against the Residence. (ECF No. 33).

On September 30, 2009, an order of discharge was entered ("Discharge Order"). (ECF No. 38).

On December 7, 2009, an order was entered in favor of USB vacating the automatic stay as to the Residence. (ECF No. 44).

On November 22, 2011, a final decree was entered closing Debtors' Chapter 7 bankruptcy case. (ECF No. 57)

On February 7, 2022, an order was entered granting Debtors' motion to reopen the bankruptcy case. (ECF No. 60).

On February 9, 2022, Debtors commenced the above-captioned adversary proceeding by filing a complaint ("Adversary Complaint") against USB, as well as Specialized Loan Servicing LLC, and Quality Loan Service Corporation ("Defendants"). (AECF No. 1). The Complaint seeks to determine the validity, extent, and priority of lien in connection with the Residence.

On March 13, 2022, Defendants filed the instant Dismissal Motion. (AECF No. 11). The motion seeks dismissal of the Complaint for failure to state a claim for which relief may be granted, or in the alternative, for summary judgment. The Dismissal Motion was noticed to be heard on May 12, 2022.

On April 27, 2022, Debtors filed an opposition ("Opposition"). (AECF No. 19).

On May 6, 2022, Defendants filed their reply ("Reply").  (AECF No. 20)

## APPLICABLE STANDARDS

A defendant may obtain dismissal of a claim alleged in a complaint under FRCP 12(b)(6) if the relevant claim lacks a cognizable legal theory or lacks sufficient facts to support a cognizable legal theory.  See Taylor v. Bosco Credit LLC, 840 Fed.Appx. 125, 126 (9th Cir. 2020); see also Los Angeles Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 800 (9th Cir. 2017).  In considering a motion under FRCP 12(b)(6), the court accepts as true all factual allegations made by, and draws all reasonable inferences in favor of, the plaintiff.  See Barnes v. Belice (In re Belice), 461 B.R. 564, 573 (B.A.P. 9th Cir. 2011).  An adversary complaint can survive a dismissal motion if it alleges sufficient facts to "state a claim to relief that is plausible on its face."  Curb Mobility, LLC v. Kaptyn, Inc., 434 F.Supp.3d 854, 858 (D. Nev. 2020) quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

This plausibility standard requires more than the mere possibility that the defendant is liable to the plaintiff.  See Nationstar Mortgage, LLC v. Maplewood Springs Homeowners Ass'n, 238 F.Supp.3d 1257, 1265 (D. Nev. 2017) ("When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief.") (external citation omitted).  Formulaic recitations of the elements of a claim for relief are insufficient by themselves to meet the plausibility standard.  Id. at 1265.  Where amendment to the subject complaint would be futile, dismissal without leave to amend may be appropriate.  See Ramachandran v. Best & Krieger, 2021 WL 428654, at *4 (N.D. Cal. Feb. 8, 2021).  Amendment is futile when it is clear that amendment would not remedy the complaint's deficiencies.  Id.

Summary judgment is governed by FRCP 56.  Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  For summary judgment purposes "[m]aterial facts are those that may affect the outcome of the case."  Farmer v. Las Vegas Metro. Police Dep't, 423 F.Supp.3d 1008, 1013 (D. Nev. 2019), citing Anderson v.

1  Liberty Lobby, Inc., 477 U.S. 242, 248 (1985).  Findings of fact may not be entered because
2  summary judgment may only be granted where there are no disputed issues of fact.  See Animal
3  Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 989-90 (9th Cir. 2016).
4         A genuine issue of material fact exists when "the evidence is such that a reasonable jury
5  could return a verdict for the nonmoving party."  Id.  The moving party's evidence is judged by
6  the same standard of proof applicable at trial.  See Celotex Corp. v. Catrett, 477 U.S. 316, 323
7  (1986); see also Southern Calif. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir.
8  2003). The burden of proof is on the party seeking the summary judgment, but the inferences
9  are viewed in favor of the opposing party.  See Eastman Kodak Co. v. Image Technical
10 Services, Inc., 504 U.S. 451, 456 (1992); see also Miller v. Glenn Miller Prods., Inc., 454 F.3d
11 975, 987 (9th Cir. 2006).  Determinations of intent or credibility generally are ill-suited for
12 disposition by summary judgment.  See Fogel Legware, etc. v. Wills (In re Wills), 243 B.R. 58,
13 65 (B.A.P. 9th Cir. 1999).  Once the moving party demonstrates the absence of disputed
14 material facts, the responding party must provide admissible evidence raising a genuine dispute.
15 The responding party cannot rely solely on conclusory allegations unsupported by factual data.
16 See Farmer v. Las Vegas Metro. Police Dep't, 423 F.Supp.3d at 1014 ("the nonmoving party
17 cannot avoid summary judgment by relying solely on conclusory allegations that are
18 unsupported by factual data [. . .] Instead, the opposition must go beyond the assertions and
19 allegations of the pleadings and set forth specific facts by producing competent evidence that
20 shows a genuine issue for trial.") (external citations omitted).

**DISCUSSION**

22         Debtors allege that after they received their Chapter 7 discharge, USB "filed a lawsuit
23 against Debtors to reinstate their deed of trust (the "State Court Case")."  Adversary Complaint
24 at ¶23.  Attached to the Adversary Complaint as Exhibit "7" is a copy of a complaint filed on
25 August 31, 2012, in the Eighth Judicial District Court, Clark County, Nevada ("State Court"),
26 styled as U.S. Bank National Association, et al. v. Angela Roylance, an individual, et al., Case
27 No. A-12-667791-C.  Debtors allege that on October 11, 2018, an order was entered in the State
28 Court Case granting summary judgment in favor of USB ("State Summary Judgment Order")

and that the order was recorded in the county records on February 21, 2019.  See Adversary Complaint at ¶28.  Attached to the Adversary Complaint as Exhibit "10" is a copy of the recorded State Summary Judgment Order.  Debtors allege that USB has relied on the State Summary Judgment Order to seek foreclosure of the Residence.  See Adversary Complaint at ¶¶ 30 and 31.

In granting summary judgment, a number of "Findings of Undisputed Material Facts" were made by the State Court resulting in various Conclusions of Law.  Among the undisputed material facts were the following:

- It is undisputed that on or around July 16, 2003, Angela Roylance ("Mrs. Roylance") executed a note and deed of trust securing a loan, with Meridias Capital as the beneficiary, to purchase the property located at 1509 Dusty Canyon Street, Henderson, NV 89052 ("Property"), which was recorded in the Clark County Recorder's Office as Instrument No. 2003071601423 ("Note" and "Deed of Trust").

- It is undisputed that on or around November 1, 2004, Wilshire Credit Corp. recorded an unauthorized reconveyance of the Deed of Trust with the Clark County Recorder's Office as Instrument No. 20041101-0000356 ("Reconveyance").

- It is undisputed that the Reconveyance was mistakenly recorded by Wilshire in error as the underlying Note had not been satisfied in full, and still has not been satisfied in full to this day.

See State Summary Judgment Order at page 2, Findings 1, 3, and 4.[3]  Among the conclusions of law were the following:

- As a threshold matter, Mrs. Roylance did not file and serve an opposition to the Motion, and therefore, this Court construe Mrs. Roylance's "[f]ailure …to serve and file [a] written opposition…as an admission that the [M]otion…is meritorious and a consent to granting the same."  EDCR 2.20(e).  Thus, the Court decided the Motion before the March 21, 2017, hearing date, considered the Motion on its merits, granted it, and ordered

---

[3] Because summary judgment is based on material facts that are not in dispute, factual findings typically are not made in deciding a motion.  See generally Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987, 989-90 (9th Cir. 2016).  In this instance, however, the State Court's "findings" merely identified the material facts that are not in dispute.  Debtors apparently were given the opportunity to raise disputes of material fact, but did not oppose the summary judgment motion.  Under its applicable rules governing motion practice, the State Court addressed the summary judgment motion on its merits.

6

    the March 21 hearing off calendar.  EDCR 2.23; *see also* EDCR 2.20 and EDCR 7.40.

- The Court determines, as a matter of law, that Mrs. Roylance obtained a mortgage on the Property through the Note, which was secured by the Deed of Trust.  The Court concludes, as a matter of law, that the Deed of Trust was mistakenly reconveyed, as Mrs. Roylance had not paid her mortgage in full.  Indeed, even after the mistaken reconveyance, Mrs. Roylance acknowledged the debt as due and owing as she continued to pay her mortgage.

- The Court concludes, as a matter of law, due to the mistake in reconveying the Deed of Trust, U.S. Bank is entitled to a declaration setting aside the Reconveyance and reinstating the Deed of Trust to its original priority position.

- Accordingly, it is hereby declared that the Reconveyance is set aside and the Deed of Trust is reinstated to its original prior position.

See State Summary Judgment Order at page 4, Conclusions A.1 and page 5, Conclusions B.6, 7, and 9.

    Debtors frame their Adversary Complaint as three separate claims for relief, but both of the first two claims seek a judgment "declaring that (a) Plaintiff/Debtor Angela Roylance holds title to the Subject Property free and clear of the U.S. Bank Mortgage deed of trust and clear from all claims asserted by the Defendants; (b) the balance owed on the Promissory Note was discharged by act of the Debtors' bankruptcy discharge thus there was no balance owed on the Note; and (c) Defendants are forever enjoined from pursuing further foreclosure of the Subject Property."  See Adversary Complaint at ¶¶38 and 44.  Debtors' third claim alleges that "Defendants obtained a judgment in the State Court Case purporting to reinstate their lien position and purportedly reinstating the balance owed on their promissory Note which they admitted as unsecured as of the time Debtors filed for bankruptcy protection." Id. at ¶47. Debtors pray for a variety of relief, including "That this Court determine the Deed of Trust that was purportedly reinstated by the State Court Case is invalid and void and without legal force and effect as to any interest in the Subject Property."  Id. at page 8, Prayer No. 1.

    Because the Debtors seek relief from this bankruptcy court that plainly is at odds with the State Summary Judgment Order, Defendants seek entry of an order dismissing the

7

Adversary Complaint, or granting summary judgment. Defendants primarily rely on the "Rooker-Feldman" doctrine that essentially prevents a federal court from reviewing state court judgments. In response, Debtors maintain that they do not dispute the validity of the State Summary Judgment Order. Instead, Debtors argue that because of their Chapter 7 discharge, there no longer was a debt in existence, i.e., a balance owed on the underlying note; and therefore, no obligation to which the deed of trust or any other lien could attach. See Opposition at 8:24 to 9:3. Because there allegedly was no debt after the discharge was entered, Debtors maintain that the lien imposed or reinstated by the State Summary Judgment Order is invalid. In their reply, Defendants maintain that USB had at least an equitable lien against the Residence that was not extinguished by the discharge. See Reply at 6:8-13. Moreover, because prepetition liens generally pass through a bankruptcy proceeding unless avoided, Defendants argue that the lien rights were not altered by the State Summary Judgment Order. Id. at 6:14-17,

The court has considered the written and oral arguments of the parties, along with the record in the case. For several reasons, the court concludes that the Dismissal Motion must be granted.

First, a fundamental tenet of bankruptcy law is that a bankruptcy discharge impacts only the debtor's personal liability on a prepetition debt but not the in rem liability to a secured creditor. See Kurtin v. Ehrenberg (In re Elieff), 637 B.R. 612, 626 (B.A.P. 9th Cir. 2022), citing Johnson v. Home State Bank, 501 U.S. 78, 84 (1991). Because in rem liability is unaffected by the discharge of personal liability, prebankruptcy liens "pass through" bankruptcy unless the lien or encumbrance is set aside.[4] See Long v. Bullard, 117 U.S. 617, 620-21 (1886); Lane v. Bank of New York Mellon, 959 F.3d 1226, 1229-1230 (9th Cir. 2020).[5] In other words,

---

[4] Bankruptcy offers several ways for pre-bankruptcy liens on a debtor's property to be set aside or avoided. See, e.g., 11 U.S.C. §522(f) (avoidance of judicial liens and non-possessory, non-purchase money security interests that impair an individual debtor's exemptions); 11 U.S.C. §550 (avoidance of pre-bankruptcy transfers or obligations); 11 U.S.C. §506(d) (avoidance of liens securing disallowed claims).

[5] Debts may continue to exist even if there is a valid defense to enforcement available under applicable law. See, e.g., Midland Funding, LLC v. Johnson, 137 S.Ct. 1407 (2017)

8

a prebankruptcy debt continues to exist after a discharge; it simply cannot be enforced as a personal liability of the debtor.[6]

Second, the parties do not dispute that the balance owed on the prepetition debt was not paid in full and that the Debtors' personal liability for the balance has been discharged.  No suggestion is made that entry of the State Summary Judgment Order violated the discharge injunction and no one suggests that the automatic stay applied to the commencement of the State Court action or entry of the State Summary Judgment Order.[7]  In other words, the State Summary Judgment Order is not void under bankruptcy law.

Third, no suggestion is made that the State Court lacked personal jurisdiction over the parties or subject matter jurisdiction over the matters at issue in the State Court Case.  No one disputes that the State Court entered judgment based on an application of Nevada law.  No one suggests that the State Court was unaware of the Debtors' discharge.  In fact, the State Court specifically took judicial notice of the Debtors' bankruptcy proceeding as well as the documents filed in the Chapter 7 case.  See State Summary Judgment Order at 2 n.1.  More important, no

---

(statute of limitations defense under Alabama law).  Various jurisdictions even treat a bankruptcy discharge as an affirmative defense that must be raised to prevent a judgment from being obtained on a discharged debt, see, e.g., NEV.R.CIV.P. 8(c)(1)(E), OR.R.CIV.P. 19(b) and UT R. CIV.PROC., Rule 8(c), even though a judgment on a discharged debt is void under bankruptcy law.  See 11 U.S.C. §524(a)(1) ("A discharge…voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727…of this title.").

[6] For example, to retain essential personal property, individual debtors may voluntarily agree to reaffirm their personal liability for the remaining balance of a consumer debt that otherwise would be discharged.  See 11 U.S.C. §524(c).  Absent such an agreement, the individual debtor's personal liability is discharged but the in rem liability continues to exist.  Thus, if the individual debtor fails to keep current on the debt secured by the property, the secured creditor can exercise its lien rights against the property, including repossession and foreclosure, but cannot pursue the debtor for any remaining balance.  In short, a bankruptcy discharge does not eliminate debt; it eliminates a creditor's ability to enforce the debt as a personal liability.

[7] Because the Debtors had received their discharge and the Chapter 7 case was closed, the State Court did not have to consider nor did it conclude that the automatic stay was inapplicable.  Compare Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1083-84 (9th Cir. 2000)(federal courts have authority to determine applicability of automatic stay and are not bound by a prior state court determination of its applicability).

9

one disputes that the State Summary Judgment Order is a final judgment.

Fourth, the relief sought by the Adversary Complaint is fundamentally at odds with the determinations of the State Court. Based on the record before it, the State Court found certain facts to be undisputed. Based on those undisputed facts, the State Court concluded as a matter of Nevada law that the subject deed of trust was mistakenly reconveyed and that the Debtors had not paid the debt in full. Based on those undisputed facts, the State Court concluded as a matter of Nevada law that due to a mistake in reconveying the subject deed of trust, USB was entitled to a declaration setting aside the reconveyance and reinstating the deed of trust to its original priority position. As a result, the State Court expressly "ORDERED, ADJUDGED, DECREED, AND DECLARED that the Reconveyance is set aside and the Deed of Trust is reinstated to its original priority position." In the face of the State Court's conclusions, Debtors pray that the bankruptcy court make the following determinations: (1) that "the Deed of Trust that was purportedly reinstated by the State Court Case is invalid and void and without legal force and effect as to any interest in the Subject Property," (2) that "the Note with Defendant U.S. Bank, Trustee, as the Beneficiary was discharged by the issuance of the Debtor's Discharge Order issued September 30, 2009," (3) that "Defendants have no interest whatsoever; be it legal or equitable; in the Subject Property," and (4) that "Plaintiff Angela Roylance holds title to the Subject Property without any claims whatsoever of any of the Defendants." Adversary Complaint at 8-9, Prayer for Relief, Nos. 1, 2, 3, and 5.

Fifth, a simple statement of the Rooker-Feldman doctrine[8] is that it bars relief that "would require the [federal court] to determine that the state court's decision was wrong and thus void." Henrichs v. Valley View Dev., 474 F.3d 609, 616 (9th Cir. 2007).[9] Application of

---

[8] The doctrine is based on two decisions of the U.S. Supreme Court: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[9] The Rooker-Feldman doctrine is applicable in bankruptcy cases to bar bankruptcy courts from reviewing state court decisions. See, e.g., In re Thomason, 2022 WL 318181, at *8 (Bankr. D. Idaho Feb. 2, 2022)(claim objection proceeding); In re Wollner, 2020 WL 2764693, at *4 (Bankr. D. Ariz. May 26, 2020)(adversary to determine validity of prior state court foreclosure judgment); In re Fikrou, 2019 WL 5783260, at *4 (Bankr. D. Nev. July 31, 2019)(debtor's motion to vacate state court order denying declaratory relief).

the doctrine bars both direct appeals of state court judgments to a lower federal court as well as "de facto" appeals where the losing party "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." Noel v. Gall, 341 F.3d 1148, 1164 (9th Cir. 2003); Levandowski v. DiPasquale (In re Levandowski), 2021 WL 948710, at * 3 (D. Ariz. Mar. 12, 2021).  In this instance, Debtors' prayer is a de facto appeal of the State Summary Judgment Order because it is premised on a position that the State Court was legally incorrect under bankruptcy law and the relief it granted was improper.  As previously discussed, Debtors are incorrect as to the impact of a discharge under bankruptcy law, and the State Court determined the remedy available under Nevada law to preserve USB's in rem claim that was never discharged.[10]

Sixth, no exception to the Rooker-Feldman doctrine applies to the instant adversary proceeding.  No suggestion is made that the State Summary Judgment Order is the product of extrinsic fraud.  See, e.g., Benavidez v. County of San Diego, 993 F.3d 1134, 1143 (9th Cir. 2021) (federal challenge to juvenile court medical examination order permitted where order was obtained in violation of constitutional rights).  Debtors do not allege or even suggest that they were unaware of the summary judgment request by USB, but instead argue that it was granted on a default basis.[11]  See Opposition at 3:4-17.  The State Court specifically addressed the

---

[10] The second page of the Discharge Order included an "Explanation of Bankruptcy Discharge in a Chapter 7 Case."  It expressly stated that "The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged."  It also provided that "a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case."  It correctly explained that a discharge eliminates only the debtor's legal obligation to pay a debt, not the debt itself.  Moreover, it correctly explained that the in rem rights of creditors pass through a bankruptcy unless the liens are avoided or eliminated during the bankruptcy case.

[11] There is no dispute that Angela was represented by counsel in the State Court Case.  There is no question that Angela had notice of the summary judgment motion.  There is no suggestion that Angela was unable to respond to the summary judgment motion.  There is no question that Angela had an opportunity to raise factual disputes preventing disposition of USB's complaint by summary judgment, or to raise legal disputes preventing disposition in favor of USB.  In this instance, the State Court applied applicable rules of court allowing it to reach the merits of the summary judgment motion based on Angela's failure to file a written response.  The Rooker-Feldman doctrine bars a federal court from reviewing a state court

11

Debtors' failure to respond to the summary judgment motion and the consequence of that failure in connection with the disposition of a summary judgment motion. Debtors do not allege or even suggest that they were unaware of the State Summary Judgment Order or did not receive notice of its entry. Likewise, no suggestion is made that the State Court entered a final decision on a question of bankruptcy law such as the applicability of the automatic stay or the effect of the discharge.[12] When the State Summary Judgment Order was entered on October 11, 2018, the automatic stay already had terminated many years before. See 11 U.S.C. §362(c)(1 and 2).[13] When the State Summary Judgment Order was entered, the Discharge Order entered on September 30, 2009, had not affected the in rem liability to USB. Moreover, no order had been entered by the bankruptcy court during the Chapter 7 proceeding to extinguish any lien in favor of USB. See note 4, supra.

      Finally, all of the alleged defects in the State Summary Judgment Order could have been addressed through a direct appeal. If the only claim determined by the State Court was USB's request for declaratory relief, see Opposition at 3:20-28, Angela could have appealed the basis for the legal conclusion reached under Nevada law as well as the form of the remedy imposed. If Angela maintained that her Chapter 7 discharge eliminated her debt entirely rather than simply preventing enforcement of Angela's personal liability for the unpaid balance, she could have raised that argument before the State Court and preserved the issue on appeal. Likewise, if Angela disputed whether the State Court could grant summary judgment on a motion that she did not have funds available to oppose, see Opposition at 3:15-16, she could have appealed

---

judgment irrespective of whether the findings of the state court would be accorded issue preclusive effect, i.e., examining whether issues were actually litigated.

[12] Where a prior state court order does determine the applicability of the automatic stay, the Rooker-Feldman doctrine does not bar a bankruptcy court from making its own determination. See discussion at note 7, supra.

[13] The automatic stay elapsed as to the Debtors when they obtained their Discharge Order on September 30, 2009. 11 U.S.C. §362(c)(2)(C). When the Chapter 7 case was closed on November 22, 2011, the bankruptcy estate's interest in the non-exempt Residence was abandoned. See 11 U.S.C. §554(c). Because the Residence was no longer property of the estate, the stay of any act against the Residence also terminated. See 11 U.S.C. §362(c)(1)(A).

whether the State Court abused its discretion. As one court has observed: "The proper venue for appellate review of a state-court judgment is that state's appellate courts." In re Wollner, 2020 WL 2764693, at *4. Angela should have appealed the State Summary Judgment Order to the Nevada appellate courts, instead of pursuing this de facto appeal.

For these reasons, the court concludes that the relief sought by the Debtors is barred by the Rooker-Feldman doctrine. A copy of the State Summary Judgment Order is attached to the Adversary Complaint. Construing the allegations of the Adversary Complaint in the light most favorable to the Debtors, they have not stated a plausible basis for claim for relief that would not invalidate the State Summary Judgment Order. Dismissal, therefore, is appropriate for failure to state a claim for which relief may be granted by this court. Because the court cannot grant the relief requested, any amendment to the Adversary Complaint would be futile. Accordingly, leave to amend will not be granted.

In the alternative, the court also concludes that there are no genuine disputes of material fact as to the entry of the State Summary Judgment Order. Based on the record and undisputed facts, Defendants are entitled to judgment as a matter of law that this court is barred from granting relief from the State Summary Judgment Order.

**IT IS THEREFORE ORDERED** that Defendants U.S. Bank National Assoc., as Trustee; Specialized Loan Servicing, LLC; and Quality Loan Service Corporation's Motion to Dismiss or in the Alternative Moton for Summary Judgment as to Plaintiff[sic] Matthew and Angela Roylance's "Complaint to Determine Validity, Extent, and Priority of Lien and Other Relief," Filed February 9, 2022, brought in the above-referenced adversary proceeding, Adversary Docket No. 11, be, and the same hereby is, **GRANTED without leave to amend.**

**IT IS FURTHER ORDERED** that all pending matters scheduled in this adversary proceeding are **VACATED** from the court's calendar.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
MATTHEW ROYLANCE
ANGELA ROYLANCE
1509 DUSTY CANYON STREET
HENDERSON, NV 89052

# # #